RECEIVED

JAN 2 8 2008

AT 8:30_____M
WILLIAM T. WALSH
CLERK

NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|   |   |   |
|---|---|---|
| ASTRAZENECA, et al., | : | Civil Action No.: 05-5553 (JAP) |
|   | : |   |
| Plaintiffs, | : | **MEMORANDUM OPINION AND ORDER** |
|   | : | **ISSUED IN CONJUNCTION WITH THE** |
| v. | : | **COURT'S REQUEST FOR** |
|   | : | **INTERNATIONAL JUDICIAL** |
| RANBAXY PHARMACEUTICALS, | : | **ASSISTANCE PURSUANT TO THE** |
| INC., et al., | : | **HAGUE CONVENTION OF 18 MARCH** |
|   | : | **1970 ON THE TAKING OF EVIDENCE IN** |
| Defendants. | : | **CIVIL OR COMMERCIAL MATTERS TO** |
|   | : | **THE APPROPRIATE JUDICIAL** |
|   | : | **AUTHORITY IN SWEDEN** |

**BONGIOVANNI, Magistrate Judge**

Presently before the Court is a Motion by Defendants Ranbaxy Pharmaceuticals, Inc.,

Ranbaxy Inc., and Ranbaxy Laboratories Limited ("Ranbaxy" or "Defendants") seeking that this

Court issue a Letter of Request ("Request") for international judicial assistance in Sweden to take

the oral deposition testimony, and to obtain related documents, from three former employees of

Plaintiffs AstraZeneca AB, Aktiebolaget Hässle, AstraZeneca LP, KBI Inc., and KBI-E Inc.

("AstraZeneca" or "Plaintiffs"). Plaintiffs oppose the Motion. For the following reasons, Defendants'

Motion is hereby GRANTED.[1]

**I. Factual and Procedural Background**

The pertinent facts giving rise to the instant Motion are relatively straightforward, and shall

be recited briefly for the benefit of the parties. Defendants seek to obtain deposition testimony and

accompanying documents from three former employees of AstraZeneca. These individuals, Hanna

---

1. The Request endorsed by the undersigned is attached hereto at Attachment A.

Cotton, Anders Mattson, and Eva Möller Leander, are named inventors of one of the six patents in suit, were involved with the development of the commercial product Nexium, and reside in Sweden. Plaintiffs assert that "Ranbaxy was repeatedly informed that Mr. Mattson and Ms. Möller Leander would voluntarily appear for deposition in the United States, subject to the reasonable and logical condition that the parties reach a mutually agreeable procedure for deposing former employees." (Plaintiffs' September 17, 2007 Memorandum in Opposition to Defendants' Motion at 3 ("Opposition")). "Defendants were also informed that Ms. Cotton would not voluntarily appear for deposition." (*Id.*).

In response to Ranbaxy's request for the addresses of the three individuals, "AstraZeneca stated that there was no need to provide the addresses of Mattson and Möller Leander because these two witnesses may appear voluntarily in the United States if the parties agreed to deposition for former employees." (Defendants' August 30, 2007 Memorandum in Support of Its Motion at 2 ("Moving Brief")). According to Ranbaxy, AstraZeneca has "repeatedly asserted that it anticipates voluntarily producing Mattson and Ms. Möller Leander for depositions in the U.S.," but has "made little effort, in any, to reach an agreement with regard to former employee depositions." (*Id.* at 2-3).

On March 14, 2007, this Court conducted a telephone conference at which time AstraZeneca confirmed for the parties and the Court its position that "with potential exceptions, [it] would produce the former employees willing to travel and ... would produce them, if [it] could, in New York." (Opposition at 4). Notably, "AstraZeneca subsequently informed Ranbaxy that Hanna Cotton will not voluntarily appear for deposition in the United States or elsewhere." (Moving Brief at 2). Her unavailability stemmed from a familial commitment that precluded her travel at the time. (Opposition Brief at 4). During that call, counsel for Plaintiff asserted that Ms. Möller Leander and

2

Mr. Mattson "may well be able to [be] produce[d] ...voluntarily, but for today's purposes, [Counsel for Defendant] should assume that he should start the Hague process with respect" to those two individuals. (Moving Brief at Ex. C). During the conference, counsel for Plaintiff was clear that Ms. Cotton would not be available. (*Id.*).

Ranbaxy seeks through this Request testimony and documents related to invalidity and non-infringement. Specifically, it seeks (1) testing and clinical studies of Nexium and related compounds, (2) Nexium publications, (3) prosecution of patents covering Nexium, such as the '085 and '789 Patents, (4) prior art compounds, (5) the chemical and physical properties of esomeprazole and related compounds, (6) conception records for the '085 and '789 Patents, and (7) determination of inventorship for the '085 and '789 Patents. The scope of these categories is further defined in Annexes A, B, and C, enumerating the points of testimony sought from the three individuals.

Because of the time required by the Hague Convention process, Ranbaxy could not "wait until some unknown future date to determine if agreement can be reached between the parties." (Moving Brief at 4). It ultimately filed the instant Motion on August 30, 2007. Opposition was filed September 17, 2007, and reply papers were filed September 27, 2007.

## II. Legal Standard and Analysis

Federal Rule of Civil Procedure 28(b) provides that "[d]epositions may be taken in a foreign country ... pursuant to a letter of request ... [which] shall be issued on application and notice and on terms that are just and appropriate." FED.R.CIV.P. 28(b)(West 2008). The Hague Convention provides methods for deposing witnesses to the same extent the requested member country would compel the witness in a domestic case. "In executing a Letter of Request the requested authority shall

3

apply the appropriate measures of compulsion in the instances and to the same extent as are provided by its internal law for the execution of orders issued by the authorities of its own country or of requests made by parties in internal proceedings." Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, art. 10, 23 U.S.T. 2555. The Convention was "intended as a permissive supplement, not a preemptive replacement, for other means of obtaining evidence located abroad." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the Dist. of Iowa*, 482 U.S. 522, 536 (1987). As such, the Convention's procedures, "although not mandatory, are available whenever they will facilitate the gathering of evidence, and apply in the sense that they are one method of seeking evidence that a court may elect." *In re Automotive Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 300 (3d Cir. 2004). "On an application for the issuance of a letter rogatory seeking a deposition in a foreign country, the Court will not ordinarily weigh the evidence to be elicited by deposition and will not determine whether the witness will be able to give the anticipated testimony." *DBMS Consultants v. Computer Assocs. Int'l*, 131 F.R.D. 367, 369 (D.Mass. 1990). The party seeking to utilize Convention procedures bears the burden of establishing the propriety of that method over the use of the Federal Rules governing discovery. *Benton Graphics v. Uddeholm Corp.*, 118 F.R.D. 386, 389 (D.N.J. 1987)(Wolfson, U.S.M.J.).

"[W]hether to resort to the Convention requires 'prior scrutiny in each case of the particular facts, sovereign interests, and likelihood that such resort will prove effective.'" *In re Automotive Refinishing Paint Antitrust Litig*, 358 F.3d at 300 *(quoting Aerospatiale*, 482 U.S. at 544). The protection afforded prospective foreign deponents includes a specific instruction by the *Aerospatiale* Court that American courts should "exercise special vigilance to protect foreign litigants from the

danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." 482 U.S. at 546.

*A. The terms of the Request are just and appropriate pursuant to Rule 28(b).*

As a threshold matter, the Court finds that It is permitted by Rule 28(b) to issue the Request, as its terms are just and appropriate. Necessarily, a finding of the "justness" of a particular request, and its "appropriateness" under the specific set of circumstances, requires case-by-case review. Here, Ranbaxy has since at least March 2007 put AstraZeneca on notice that it would seek to obtain discoverable materials from Hanna Cotton, Anders Mattson, and Eva Möller Leander, named inventors of one of the six patents in suit who were involved with the development of the commercial product in issue and reside in Sweden. Plaintiffs even indicated during the March 14, 2007 telephone conference before the undersigned that Defendants' best course of action, based on the individuals' likely unavailability in the United States, would be to "start the Hague process." Moving Brief at Ex. C (Excerpt of March 14, 2007 Hearing Transcript at 33-34).

Throughout the following summer, "AstraZeneca informed Ranbaxy in numerous letters that these witnesses will voluntarily appear for deposition in the United States upon the parties reaching mutually agreeable procedures for deposing former employees." Moving Brief at Ex. E (August 21, 2007 letter from Zullow to Cruz). During that time, AstraZeneca opposed any possible resort to Hague Convention procedures "in light of this offer by AstraZeneca and the availability of less costly and more efficient methods of discovery." *Id.*

The Request is geared toward testimony and documents related to invalidity and non-infringement. Specifically, it seeks

(1) testing and clinical studies of Nexium and related compounds;

(2) Nexium publications;

(3) prosecution of patents covering Nexium, such as the '085 and '789 Patents;

(4) prior art compounds;

(5) the chemical and physical properties of esomeprazole and related compounds;

(6) conception records for the '085 and '789 Patents; and

(7) determination of inventorship for the '085 and '789 Patents.

Plaintiffs object to the requests as "overbroad," and argue that they are "not particularized in scope regarding Ms. Cotton's (or other individuals') involvement with the inventions, are not reasonably likely to be within Ms. Cotton's (or other individuals') possession, and are reasonably likely to be collected from other sources." Opposition Brief at 9.

Though perhaps available, any efficient or cost-effective method of deposing these three individuals has been destroyed by the parties' stalemate. Furthermore, the Court concurs with Ranbaxy's conclusion that "the three witnesses are named inventors of the patents-in-suit and the requested information is relevant to issues such as testing and clinical studies of AstraZeneca's Nexium product and related compounds, prosecution of patents related to Nexium, and records regarding conception and inventorship." Reply Brief at 8-9.

In sum, the Court concludes that the seven categories listed above, as shaped by Annexes A, B, and C of the Request, are not overbroad; they are crafted to obtain discoverable evidence, and only go as far as the deponents' ability to fulfill them. The Court further finds that, to the extent the information sought is "likely to be collected from other sources," It does not oppose the parties' entering into agreements to narrow the scope or produce the information through alternate avenues.

It further reminds Plaintiffs that, to the extent information or documents sought have already been produced, AstraZeneca is merely required to identify with reasonable detail where Ranbaxy can find it. However, based on the Record before It and the time that has passed without the production of the information sought, the Court concludes that the terms of the Request are just and appropriate, and therefore should be issued under Rule 28.

## B. The Court opts to resort to Hague Convention procedures for obtaining the information sought.

The Convention's procedures are available whenever they will facilitate the gathering of evidence, and apply should a court so elect. *In re Automotive Refinishing Paint Antitrust Litig.*, 358 F.3d at 300. In electing to issue a request pursuant to the Hague Convention, the Court must scrutinize (1) the particular facts before It, (2) the sovereign interests of Sweden, and (3) the likelihood that such resort will prove effective. *Id.*

First, under the set of facts outlined above, its clear that the primary reason why Mr. Mattson and Ms. Möller Leander have not yet been deposed rests with Plaintiffs' assertion that they could voluntarily appear for deposition in the United States, conditioned wholly on the parties' mutual agreement to deposition procedures of former employees and scheduling. Ms. Cotton indicated an unwillingness to appear for her deposition at the time the instant Motion was filed for personal reasons; even assuming her position has changed since, she undoubtably falls into the same category as the other two individuals.

The particular facts, at their core, tell a story of inactivity for over six months preceding completion of the briefing of this Motion. Nor has a resolution been reached during the pendency of this Motion. The time for holding off on requesting international assistance based on open-ended

contingencies must end. The Court agrees with Ranbaxy's sentiment that it is "appropriately initiating the Hague Convention process at this time in case the witnesses do not end up agreeing to provide discovery voluntarily." Reply Brief at 5. Based on the particular facts, the Request will facilitate the heretofore impossible gathering of this discovery.

Second, the Court is dubious that Its arm reaches relevancy determinations under Swedish law. AstraZeneca asserts that the categories of testimony and documents fail to comply with the provisions of Article 23 of the Convention, which states

> A Contracting State may at the time of signature, ratification or accession, declare that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in Common Law countries.

Hague Convention, art. 23. Plaintiffs argue that Sweden's 1980 Declaration made pursuant to Article 23 "does not support broad sweeping pre-trial requests for documents line the ones enumerated by Ranbaxy in the Letter of Request." Opposition Brief at 8.  Reading the 1980 Declaration in Plaintiffs' favor, it appears that any reservations regarding the scope of discovery permissible by Swedish law would be brought to a Swedish court.

> It is well known that the scope of American discovery is often significantly broader than is permitted in other jurisdictions, and we are satisfied that foreign tribunals will recognize that the final decision on the evidence to be used in litigation conducted in American courts must be made by those courts.

*Aerospatiale*, 482 U.S. at 542. Thus, even if the requests were broader than permitted by the 1980 Declaration, the proper Swedish authorities would be in the best position to find so. Thereby, considerations of comity and the sovereign interests of Sweden would be best served by allowing that country to outline the permissible scope of the requests.

8

Third, Plaintiffs argue that resorting to the Convention procedures would be improper, "given the availability of [at least Mr. Mattson and Ms. Möller Leander] through discovery under the Federal Rules of Civil Procedure, the ineffectiveness of Convention procedures in the context of this consolidated case, and the unnecessary expenditure of judicial resources and legal costs to pursue Convention procedures." Opposition Brief at 7. While that may be true, the Court agrees that "unless and until the witnesses voluntarily agree to provide the requested discovery, the Hague Convention is the only way to obtain evidence from these individuals." Reply Brief at 5.

Of course, the parties are encouraged to continue negotiations regarding the depositions of the three former employees during the pendency of the Convention procedures. However, this request must be in place as a control event; should the parties make arrangements obviating the need for the Request, they may simply withdraw it. Absent such an agreement, the Court fails to see how any other means of obtaining international discovery under these circumstances would be as effective as the issuance of the Request.

## III. Conclusion and Order

The Court finds that the terms of the Request are just and appropriate, and that based on the particular facts and the likelihood that such resort will prove effective, Defendants have adequately demonstrated that resort to Hague Convention procedures in order to obtain oral deposition testimony and related documents from Plaintiffs' former employees Hanna Cotton, Anders Mattson, and Eva Möller Leander is appropriate.

9

For the foregoing reasons, IT IS on this 25th Day of January, 2008,

ORDERED that Defendants' Motion seeking that this Court issue a Letter of Request seeking international judicial assistance in Sweden to take the oral deposition testimony, and to obtain related documents, from Hanna Cotton, Anders Mattson, and Eva Möller Leander is GRANTED; and it is further

ORDERED that the Clerk of the Court terminate this Motion accordingly [Docket Entry No. 49].


TONIANNE J. BONGIOVANNI
UNITED STATES MAGISTRATE JUDGE

# Attachment A

Robert G. Shepherd, Esq. (RGS-5946)
Brooks R. Bruneau, Esq. (BRB-5523)
Kristine Butler-Holston, Esq. (KBH-2492)
**MATHEWS, SHEPHERD, McKAY & BRUNEAU, P.A.**
29 Thanet Road, Suite 201
Princeton, NJ 08540-3674
(609) 924-8555 Telephone
(609) 924-3036 Facsimile

Attorneys for Defendants and Counterclaimants,
RANBAXY PHARMACEUTICALS, INC.,
RANBAXY INC. AND
RANBAXY LABORATORIES LIMITED

**RECEIVED**

**JAN 2 8 2008**

AT 8:30_____M
WILLIAM T. WALSH
CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## TRENTON VICINAGE

| | |
|---|---|
| ASTRAZENECA AB, AKTIEBOLAGET HÄSSLE, ASTRAZENECA LP, KBI INC. AND KBI-E INC.,<br><br>                    Plaintiffs,<br><br>      v.<br><br>RANBAXY PHARMACEUTICALS, INC., RANBAXY INC. AND RANBAXY LABORATORIES LIMITED, and IVAX CORPORATION, IVAX PHARMACEUTICALS, INC., IVAX PHARMACEUTICALS NV, INC., TEVA PHARMACEUTICALS USA, INC., AND TEVA PHARMACEUTICAL INDUSTRIES LTD.,<br><br>                    Defendants.<br><br>RANBAXY PHARMACEUTICALS, INC., RANBAXY INC. AND RANBAXY LABORATORIES LIMITED,<br><br>                    Counterclaimants,<br><br>      v.<br><br>ASTRAZENECA AB, AKTIEBOLAGET HÄSSLE, ASTRAZENECA LP, KBI INC. AND KBI-E INC.,<br><br>                    Counterdefendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br> Consolidated Civil Action No. 05-5553 (JAP)<br><br>Honorable Joel A. Pisano, U.S.D.J.<br>Honorable Tonianne J. Bongiovanni, U.S.M.J.<br><br>**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE IN CIVIL OR COMMERCIAL MATTERS TO THE APPROPRIATE JUDICIAL AUTHORITY IN SWEDEN**<br><br>RETURN DATE:  October 1, 2007<br><br>**Document Electronically Filed** |

| | |
|---|---|
| APPLICANT/<br>REQUESTING AUTHORITY: | Honorable Tonianne J. Bongiovanni<br>United States Magistrate Judge<br>District of New Jersey<br>Clarkson S. Fisher Federal Building<br>U.S. Courthouse<br>402 East State Street<br>Trenton, NJ 08608 |
| SENDER: | William R. Zimmerman<br>Knobbe, Martens, Olson & Bear, LLP<br>2040 Main Street, 14th Floor<br>Irvine, CA 92614<br>Telephone: (949) 760-0404 |
| CENTRAL AUTHORITY OF<br>REQUESTED STATE: | Ministry of Justice<br>Division for Criminal and<br>International Judicial Cooperation (BIRS)<br>Central Authority<br>SE-103 33 Stockholm<br>SWEDEN |
| PERSON TO WHOM THE EXECUTED<br>REQUEST IS TO BE RETURNED: | William R. Zimmerman<br>Knobbe, Martens, Olson & Bear, LLP<br>2040 Main Street, 14th Floor<br>Irvine, CA 92614<br>Telephone: (949) 760-0404 |

In conformity with Article 3 of the Hague Convention, the undersigned applicant has the honor to submit the following request:

TO: The Competent Central Authority in Stockholm, Sweden: The Ministry of Justice, Division for Criminal and International Judicial Cooperation (BIRS), SE-103 33 Stockholm, Sweden.

I, the Honorable Tonianne J. Bongiovanni, Magistrate Judge of the United States District Court for the District of New Jersey, respectfully request that this Letter of Request be executed by the Ministry of Justice as the Central Authority designated under the terms of The Hague Convention of 18 March 1970 on the Taking of Evidence in Civil or Commercial Matters.

The above-captioned claim is now pending in the United States District Court for the District of New Jersey.

The names and addresses of the parties to the proceedings and their representatives are listed below:

PLAINTIFF 1:                              AstraZeneca AB
                                          Södertälje
                                          SE-151 85
                                          SWEDEN

PLAINTIFF 2:                              Aktiebolaget Hässle
                                          Karagatan 5
                                          S-431 83 Mölndal
                                          SWEDEN

PLAINTIFF 3:                              AstraZeneca LP
                                          1800 Concord Pike
                                          Wilmington, DE  19803-5437

PLAINTIFF 4:                              KBI INC.
                                          One Merck Drive
                                          P.O. Box 100
                                          Whitehouse Station, NJ  08889-0100

PLAINTIFF 5:                              KBI-E INC.
                                          300 Delaware Avenue
                                          Suite 1705
                                          Wilmington, DE  19801

COUNSEL FOR PLAINTIFFS:                   Errol B. Taylor
AstraZeneca AB,                           Milbank, Tweed, Hadley & McCloy LLP
Aktiebolaget Hässle,                      1 Chase Manhattan Plaza
AstraZeneca LP,                           New York, NY  10005-1413
KBI Inc. and
KBI-E Inc.                                Andrew T. Berry
                                          McCarter & English LLP
                                          Four Gateway Center
                                          100 Mulberry Street
                                          Newark, NJ  07102

DEFENDANT 1:                            Ranbaxy Pharmaceuticals, Inc.
                                        9431 Florida Mining Boulevard East
                                        Jacksonville, FL  32257

DEFENDANT 2:                            Ranbaxy Inc.
                                        600 College Road East
                                        Suite 2100
                                        Princeton, NJ  08540

DEFENDANT 3:                            Ranbaxy Laboratories Limited
                                        Plot 90, Sector 32, Gurgaon
                                        Haryana - 122001
                                        INDIA

COUNSEL FOR DEFENDANTS:                 William R. Zimmerman
Ranbaxy Pharmaceuticals, Inc.,          Knobbe, Martens, Olson & Bear, LLP
Ranbaxy Inc. and                        2040 Main Street, 14th Floor
Ranbaxy Laboratories Limited            Irvine, CA 92614

                                        Robert G. Shepherd
                                        Mathews, Shepherd, McKay & Bruneau, P.A.
                                        29 Thanet Road, Suite 201
                                        Princeton, NJ  08540-3674

DEFENDANT 4:                            Ivax Corporation
                                        4400 Biscayne Boulevard
                                        Miami, FL  33137-3204

DEFENDANT 5:                            Ivax Pharmaceuticals, Inc.
                                        4400 Biscayne Boulevard
                                        Miami, FL  33137-3204

DEFENDANT 6:                            Ivax Pharmaceuticals NV, Inc.
                                        140 Legrand Avenue
                                        Northvale, NJ  07647-2406

DEFENDANT 7:                            Teva Pharmaceuticals USA, Inc.
                                        1090 Horsham Road
                                        P.O. Box 1090
                                        North Wales, PA  19454

DEFENDANT 8:                            Teva Pharmaceutical Industries Ltd.
                                        5 Basel Street
                                        Petach Tikva 49131
                                        ISRAEL

COUNSEL FOR DEFENDANTS:
Ivax Corporation,
Ivax Pharmaceuticals, Inc.,
Ivax Pharmaceuticals NV, Inc.,
Teva Pharmaceuticals USA, Inc., and
Teva Pharmaceutical Industries Ltd.

James Galbraith
Kenyon & Kenyon
One Broadway
New York, NY 10004-1007

Allyn Zissel Lite
Lite, DePalma, Greenberg & Rivas, LLC
Two Gateway Center
12th Floor
Newark, NJ 07102-5003

**Nature of the Claim:**  The nature of the proceedings for which the evidence is requested concerns a civil patent infringement lawsuit filed on November 21, 2005, by Plaintiffs AstraZeneca AB, Aktiebolaget Hassle, AstraZeneca LP, KBI Inc. and KBI-E Inc. (collectively "AstraZeneca") against Defendants Ranbaxy Pharmaceuticals, Inc., Ranbaxy Inc. and Ranbaxy Laboratories Limited (collectively "Ranbaxy").   In this lawsuit, AstraZeneca alleges that Ranbaxy's generic S-omeprazole (also referred to as esomeprazole) product infringes U.S. Patent Nos. 5,714,504 (the "'504 Patent"), 5,877,192 (the "'192 Patent"), 6,875,872 (the "'872 Patent"), 6,428,810 (the "'810 Patent"), 6,369,085 (the "'085 Patent," attached as Exhibit A), and 5,948,789 (the "'789 Patent," attached as Exhibit B).   These patents relate generally to esomeprazole, various forms and salts of esomeprazole, esomeprazole formulations and processes for synthesizing esomeprazole.   Esomeprazole is the active ingredient in AstraZeneca's Nexium® product.

**Relief Sought:**  AstraZeneca seeks (1) a judgment delaying the FDA approval of Ranbaxy's ANDA until the expiration of the last patent-in-suit; (2) a judgment declaring that the patents in suit are valid, enforceable and have been infringed by Ranbaxy; (3) a permanent injunction against Ranbaxy prohibiting sales of Ranbaxy's esomeprazole product in the United States; (4) a

judgment that Ranbaxy's infringement is willful; and (5) attorney's fees, costs and expenses. Ranbaxy has denied AstraZeneca's allegations and has filed counterclaims against AstraZeneca for non-infringement and invalidity of the patents in suit. The U.S. court may be called upon to decide the scope of the patent claims and other issues relating to infringement and validity of the patents in suit.

**Background Facts:** Ranbaxy seeks to establish facts for use as evidence at trial regarding the development of the subject matter of the patents in suit and development of AstraZeneca's Nexium® product.   Ranbaxy seeks this evidence through the testimony of three former AstraZeneca employees, Hanna Cotton, Anders Mattson and Eva Möller Leander.

These three former employees are named inventors of the '085 Patent, *see* Ex. A, and were involved in the development of AstraZeneca's Nexium® product. In addition to the '085 Patent, Hanna Cotton is also a named inventor on the '789 Patent. *See* Ex. B. These employees' general involvement in the development of Nexium® means that they are likely to have information relevant to all of the patents in suit, which allegedly cover Nexium®, and to processes for synthesizing esomeprazole, the active ingredient in Nexium®. As named inventors of two of the patents in suit, they are particularly likely to provide information relevant to Ranbaxy's defenses for those patents. As both invalidity and non-infringement are at issue in this case, evidence obtained from these employees will be relevant to issues such as claim construction, the scope and content of the prior art, claims of unexpected results or superiority of esomeprazole over prior art compounds, accuracy of statements made in the patents in suit, as well as details relating to the prosecution of the patents in suit. The testimony and documents requested relate to these issues, and particularly to: (1) testing and clinical studies of Nexium®

and other related compounds, (2) Nexium® publications, (3) prosecution of patents covering Nexium® such as the '085 and '789 Patents, (4) prior art compounds, (5) the chemical and physical properties of esomeprazole and related compounds, (6) conception records for the '789 and '085 Patents, and (7) determination of inventorship for the '789 and '085 Patents.

Proceeding via the Hague process is necessary for Hanna Cotton as AstraZeneca has informed Ranbaxy that Hanna Cotton will not voluntarily appear for deposition in the United States or elsewhere. Ex. D, June 6, 2007 letter from Zullow to Cruz. In addition, AstraZeneca initially informed Ranbaxy and this Court that AstraZeneca may not be able to produce the other two former employees voluntarily and that Ranbaxy should proceed through the Hague Convention for inventors Mattson and Möller. Ex. C, Excerpt of March 14, 2007 Hearing Transcript at 33-34. While the parties are working toward an agreement to voluntarily produce Mattson and Möller for deposition in the United States, no such agreement has been reached. Given the lengthy Hague process, Ranbaxy cannot wait until some unknown future date to determine if agreement can be reached and is therefore filing this request.

**Confidentiality of Documents and Testimony:** All confidential information disclosed in this litigation is subject to a Protective Order designed to limit the further disclosure of confidential business information. Any confidential documents or testimony provided by Cotton, Mattson and/or Möller Leander would be protected from disclosure to the public pursuant to the terms of the Protective Order.

**Requested Taking of Evidence:** In view of the foregoing, it is necessary for the purposes of justice and for the due determination of the matters in dispute between the parties that you cause

the following witnesses, who are residents within your jurisdiction, at the below addresses, to be examined:

(1)     Hanna Cotton of Rönngatan 8, S-234 31 Lomma, Sweden;

(2)     Anders Mattson of Jägarstigen 12, SE-187 42 Täby, Sweden; and

(3)     Eva Möller Leander of Alv. 17, SE-671 41 Arvika, Sweden.

The witnesses should be examined regarding their knowledge of the issues set out in the attached Annex A, B and C and should furthermore be ordered to produce the documents set out below. The issues listed in Annex A, B and C and the requested documents will be used as evidence at trial and are important to the determination of this matter.

Documents or other property, real or personal, to be inspected (Article 3, g)

If permissible by the Court, it is requested that the witnesses produce specific documents for inspection and copying. These documents relate to (1) testing and clinical studies of Nexium® and other related compounds, (2) Nexium® publications, (3) prosecution of patents covering Nexium® such as the '085 and '789 Patents, (4) prior art compounds, (5) the chemical and physical properties of esomeprazole and related compounds, (6) conception records for the '789 and '085 Patents, and (7) determination of inventorship for the '789 and '085 Patents. It is further requested that the parties be permitted to examine Cotton, Mattson and/or Möller Leander as to the existence and content of such documents in order to be able to specify, if necessary, the scope for an order to produce documents in the course of Swedish proceedings for taking of evidence.

Any requirement that the evidence be given on oath or affirmation and any special form to be used:

It is requested that the witnesses be placed under oath before answering the questions. In the event that the witnesses cannot be placed under oath, it is requested that they answer questions in such manner as provided by local law for taking evidence.

Special methods or procedures to be followed:

It is requested: a) that Plaintiffs' and Defendants' United States trial counsel be permitted to examine the witnesses and that the examination take place before an Examiner of your court or such other person as your court shall appoint; b) that the responses of the witnesses be recorded by verbatim stenography or, if this is not possible, that Ranbaxy is allowed to bring a court reporter to the examination of the witnesses in order to keep such verbatim minutes; c) that the witnesses sign the verbatim transcript or other record of their responses to the questions; d) that the witness be examined as soon as practicable; and e) that the Court shall take all available measures to protect the confidentiality of the information obtained during the testimony.

It is further requested that the Court, if possible, request the witnesses to produce the documents requested above for inspection and copying by the parties' United States trial counsel at the place convenient to the witnesses, five business days prior to the examination of the witnesses.

It is further requested, given the importance of the evidence to be obtained, that these Requests be given the highest consideration.

To the extent that any of these Requests cannot be granted, the execution of these Requests shall be performed according to applicable law and the fact that some part or parts of this request can not be granted should not affect the execution of the remaining parts.

| | |
|---|---|
| Request for notification of the time and place for the execution of the Requests and identity and address of any person to be notified: | It is requested that the parties' U.S. legal representatives identified above be informed as soon as practicable of the date and place where the examination is to take place.  It is further requested that, if possible, notice should be furnished to these legal representatives at least 15 days before the date set for the examination. |
| Specification of privilege or duty to give evidence under the law of the state of origin: | Any privilege to refuse to give evidence under United States law is contained in the United States Federal Rules of Civil Procedure ("FRCP"), Federal Rules of Evidence and other applicable United States laws.  Specifically, the witness must answer all questions unless the witness is directed by counsel not to answer the question.   Such an instruction is appropriate only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to support a motion to cease testimony due to harassment of the witness.  *See* FRCP 30(d)(1). |

The fees and costs incurred that are reimbursable under Article 14 or under Article 26 of the Convention will be borne by Knobbe, Martens, Olson & Bear, LLP, 2040 Main Street, 14th Floor, Irvine, CA 92614, Attention:  William R. Zimmerman.

This Court also assures your authority that it will reciprocate with similar assistance in like cases and extends to the Judicial Authorities in Sweden the assurances of its highest consideration.

Date of request: _January 25, 2008_

Signature and Seal of the
Requesting Authority:

_____
The Honorable Tonianne J. Bongiovanni
United States Magistrate Judge
District of New Jersey

## ANNEX A

### Testimony To Be Provided By Hanna Cotton

1.      Any information required in order to specify, if necessary, the scope of the document request set forth above.

2.      Background information, including post-secondary education and relevant work experience.

3.      Knowledge of, and involvement in, the research and development of Plaintiffs' Nexium® product.

4.      Knowledge of, and involvement in, the development of the processes used to synthesize and/or separate esomeprazole and/or derivatives thereof (including knowledge of the person(s) involved and the identification and authentication of the documents that pertain to this topic).

5.      Knowledge of, and involvement in testing, studies and/or experiments comparing esomeprazole to omeprazole, R-omeprazole and/or other Proton Pump Inhibitors (including knowledge of the person(s) involved and the identification and authentication of the documents that pertain to this topic).

6.      Knowledge of, and involvement in clinical studies conducted to determine whether or not esomeprazole provided any clinical benefits and/or reduced interindividual variation in comparison to R-omeprazole and/or omeprazole (including knowledge of the person(s) and/or group(s) involved and the identification and authentication of the documents that pertain to this topic).

7.    All speeches, publications, presentations and/or abstracts authored by, prepared by or for Hanna Cotton relating to esomeprazole, omeprazole, R-omeprazole, derivatives thereof and/or other Proton Pump Inhibitors.

8.    The subject matter disclosed and/or claimed in the '789 Patent or any related patent or patent application (including any priority, divisional, continuation and/or continuation-in-part applications, as well as any foreign counterparts to the '789 Patent, and including identification of the person(s) and/or group(s) involved in developing said subject matter).

9.    The development of the asymmetric oxidation process disclosed in the '789 Patent, including all solvents, bases, catalysts, oxidizing agents, and/or reaction conditions considered and/or tried as well as all reasons and data relating to the selection of the solvent, base, catalyst, oxidizing agent and/or reaction conditions disclosed or claimed in the '789 Patent.

10.    Analysis of, and any efforts to duplicate or modify, prior art methods of asymmetrically oxidizing sulfides (including, but not limited to, the prior art methods of Kagan, et al. and Pitchen, et al. disclosed in the '789 Patent at column 2, line 13 through column 4, line 36).

11.    The prosecution of the '789 Patent or any related patent or patent application (including any priority, divisional, continuation and/or continuation-in-part applications, as well as any foreign counterparts to the '789 Patent).

12.    The subject matter disclosed and/or claimed in the '085 Patent or any related patent or patent application (including any priority, divisional, continuation and/or continuation-in-part applications, as well as any foreign counterparts to the '085 Patent, and including, identification of the person(s) and/or group(s) involved in developing said subject matter).

13.    The prosecution of the '085 Patent or any related patent or patent application (including any priority, divisional, continuation and/or continuation-in-part applications, as well as any foreign counterparts to the '085 Patent).

14.    Knowledge of, and involvement with, the stability of the trihydrate salt of esomeprazole magnesium in comparison to other forms, including prior art forms, of omeprazole and esomeprazole, *see, e.g.,* '085 Patent at col. 2, lines 21-25, (including the person(s) and/or group(s) involved, and the identification and authentication of the documents that support or show the facts that pertain to this topic).

15.    Knowledge of, and involvement with, the prior art and other forms of esomeprazole magnesium compounds referred to in the '085 Patent, *see, e.g.,* '085 Patent at col. 2, lines 21-24 and 32-57, including, but not limited to anhydrates, hydrates, solvates and polymorphs or amorphous forms of esomeprazole.

16.    Knowledge of, and involvement in, the characterization of the trihydrate of esomeprazole magnesium by X-ray powder diffraction (XRD), FT-IR spectroscopy, thermogravimetric analysis and/or [1]H-NMR spectroscopy, *see, e.g.,* '085 Patent, col. 2, lines 39-42, col. 3, lines 50-56 and col. 6, lines 37-39, (including the person(s) and/or group(s) involved, and the identification and authentication of the documents that support or show the facts that pertain to this topic).

17.    Knowledge of, and involvement with, the subject matter of DE 4035455 (referenced in the '789 Patent at col. 1, lines 58-61) and any attempts to repeat or modify the experiments disclosed in DE 4035455.

18.    The document retention policies for all person(s) and/or group(s) involved in developing the subject matter disclosed and/or claimed in the '789 and '085 Patents.

19.    Conception records and/or invention disclosures relating to the subject matter disclosed and/or claimed in the patents in suit.

20.    The determination of inventorship for the '789 and '085 Patents, and the identity of the individuals involved in that determination.

21.    Identification of persons involved in, and the nature and current location of documents and things relating to, the preparation, decision to file, filing, and prosecution of the '789 and '085 Patents, as well as any patent applications claiming priority from, or relating to, the '789 and '085 Patents, including continuations, continuations-in-part, divisionals or reissue applications, whether or not any of such applications ever issued as patents.

22.    The procedure for approving requests for the public release of technical information, clinical study information or related data for esomeprazole and/or Nexium®, including the identity of those involved and the nature of their involvement.

## ANNEX B

### Testimony To Be Provided By Anders Mattson

1.      Any information required in order to specify, if necessary, the scope of the document request set forth above.

2.      Background information, including post-secondary education and relevant work experience.

3.      Knowledge of, and involvement in, the research and development of Plaintiffs' Nexium® product.

4.      Knowledge of, and involvement in, the development of the processes used to synthesize and/or separate esomeprazole and/or derivatives thereof (including knowledge of the person(s) involved and the identification and authentication of the documents that pertain to this topic).

5.      Knowledge of, and involvement in testing, studies and/or experiments comparing esomeprazole to omeprazole, R-omeprazole and/or other Proton Pump Inhibitors (including knowledge of the person(s) involved and the identification and authentication of the documents that pertain to this topic).

6.      Knowledge of, and involvement in clinical studies conducted to determine whether or not esomeprazole provided any clinical benefits and/or reduced interindividual variation in comparison to R-omeprazole and/or omeprazole (including knowledge of the person(s) and/or group(s) involved and the identification and authentication of the documents that pertain to this topic).

7.      All speeches, publications, presentations and/or abstracts authored by, prepared by or for Anders Mattson relating to esomeprazole, omeprazole, R-omeprazole, derivatives thereof and/or other Proton Pump Inhibitors.

8.      The subject matter disclosed and/or claimed in the '085 Patent or any related patent or patent application (including any priority, divisional, continuation and/or continuation-in-part applications, as well as any foreign counterparts to the '085 Patent, and including, identification of the person(s) and/or group(s) involved in developing said subject matter).

9.      The prosecution of the '085 Patent or any related patent or patent application (including any priority, divisional, continuation and/or continuation-in-part applications, as well as any foreign counterparts to the '085 Patent).

10.     Knowledge of, and involvement with, the stability of the trihydrate salt of esomeprazole magnesium in comparison to other forms, including prior art forms, of omeprazole and esomeprazole, *see, e.g.,* '085 Patent at col. 2, lines 21-25, (including the person(s) and/or group(s) involved, and the identification and authentication of the documents that support or show the facts that pertain to this topic).

11.     Knowledge of, and involvement with, the prior art and other forms of esomeprazole magnesium compounds referred to in the '085 Patent, *see, e.g.,* '085 Patent at col. 2, lines 21-24 and 32-57, including, but not limited to anhydrates, hydrates, solvates and polymorphs or amorphous forms of esomeprazole.

12.     Knowledge of, and involvement in, the characterization of the trihydrate of esomeprazole magnesium by X-ray powder diffraction (XRD), FT-IR spectroscopy, thermogravimetric analysis and/or $^1$H-NMR spectroscopy, *see, e.g.,* '085 Patent, col. 2, lines 39-42, col. 3, lines 50-56 and col. 6, lines 37-39, (including the person(s) and/or group(s) involved,

and the identification and authentication of the documents that support or show the facts that pertain to this topic).

13. Knowledge of, and involvement with, the subject matter of DE 4035455 (referenced in the '789 Patent at col. 1, lines 58-61) and any attempts to repeat or modify the experiments disclosed in DE 4035455.

14. The document retention policies for all person(s) and/or group(s) involved in developing the subject matter disclosed and/or claimed in the '085 Patent.

15. Conception records and/or invention disclosures relating to the subject matter disclosed and/or claimed in the patents in suit.

16. The determination of inventorship for the '085 Patent, and the identity of the individuals involved in that determination.

17. Identification of persons involved in, and the nature and current location of documents and things relating to, the preparation, decision to file, filing, and prosecution of the '085 Patent, as well as any patent applications claiming priority from, or relating to, the '085 Patent, including continuations, continuations-in-part, divisionals or reissue applications, whether or not any of such applications ever issued as patents.

18. The procedure for approving requests for the public release of technical information, clinical study information or related data for esomeprazole and/or Nexium®, including the identity of those involved and the nature of their involvement.

## ANNEX C

### Testimony To Be Provided By Eva Möller Leander

1.     Any information required in order to specify, if necessary, the scope of the document request set forth above.

2.     Background information, including post-secondary education and relevant work experience.

3.     Knowledge of, and involvement in, the research and development of Plaintiffs' Nexium® product.

4.     Knowledge of, and involvement in, the development of the processes used to synthesize and/or separate esomeprazole and/or derivatives thereof (including knowledge of the person(s) involved and the identification and authentication of the documents that pertain to this topic).

5.     Knowledge of, and involvement in testing, studies and/or experiments comparing esomeprazole to omeprazole, R-omeprazole and/or other Proton Pump Inhibitors (including knowledge of the person(s) involved and the identification and authentication of the documents that pertain to this topic).

6.     Knowledge of, and involvement in clinical studies conducted to determine whether or not esomeprazole provided any clinical benefits and/or reduced interindividual variation in comparison to R-omeprazole and/or omeprazole (including knowledge of the person(s) and/or group(s) involved and the identification and authentication of the documents that pertain to this topic).

7.      All speeches, publications, presentations and/or abstracts authored by, prepared by or for Eva Möller Leander relating to esomeprazole, omeprazole, R-omeprazole, derivatives thereof and/or other Proton Pump Inhibitors.

8.      The subject matter disclosed and/or claimed in the '085 Patent or any related patent or patent application (including any priority, divisional, continuation and/or continuation-in-part applications, as well as any foreign counterparts to the '085 Patent, and including, identification of the person(s) and/or group(s) involved in developing said subject matter).

9.      The prosecution of the '085 Patent or any related patent or patent application (including any priority, divisional, continuation and/or continuation-in-part applications, as well as any foreign counterparts to the '085 Patent).

10.     Knowledge of, and involvement with, the stability of the trihydrate salt of esomeprazole magnesium in comparison to other forms, including prior art forms, of omeprazole and esomeprazole, *see, e.g.,* '085 Patent at col. 2, lines 21-25, (including the person(s) and/or group(s) involved, and the identification and authentication of the documents that support or show the facts that pertain to this topic).

11.     Knowledge of, and involvement with, the prior art and other forms of esomeprazole magnesium compounds referred to in the '085 Patent, *see, e.g.,* '085 Patent at col. 2, lines 21-24 and 32-57, including, but not limited to anhydrates, hydrates, solvates and polymorphs or amorphous forms of esomeprazole.

12.     Knowledge of, and involvement in, the characterization of the trihydrate of esomeprazole magnesium by X-ray powder diffraction (XRD), FT-IR spectroscopy, thermogravimetric analysis and/or [1]H-NMR spectroscopy, *see, e.g.,* '085 Patent, col. 2, lines 39-42, col. 3, lines 50-56 and col. 6, lines 37-39, (including the person(s) and/or group(s) involved,

-18-

and the identification and authentication of the documents that support or show the facts that pertain to this topic).

13.    Knowledge of, and involvement with, the subject matter of DE 4035455 (referenced in the '789 Patent at col. 1, lines 58-61) and any attempts to repeat or modify the experiments disclosed in DE 4035455.

14.    The document retention policies for all person(s) and/or group(s) involved in developing the subject matter disclosed and/or claimed in the '085 Patent.

15.    Conception records and/or invention disclosures relating to the subject matter disclosed and/or claimed in the patents in suit.

16.    The determination of inventorship for the '085 Patent, and the identity of the individuals involved in that determination.

17.    Identification of persons involved in, and the nature and current location of documents and things relating to, the preparation, decision to file, filing, and prosecution of the '085 Patent, as well as any patent applications claiming priority from, or relating to, the '085 Patent, including continuations, continuations-in-part, divisionals or reissue applications, whether or not any of such applications ever issued as patents.

18.    The procedure for approving requests for the public release of technical information, clinical study information or related data for esomeprazole and/or Nexium®, including the identity of those involved and the nature of their involvement.