NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ASTRAZENECA AB, et al.,** | **Civil Action No. 05-5553 (JAP)** |
| **Plaintiffs,** | |
| **v.** | **MEMORANDUM OPINION** |
| **RANBAXY PHARMACEUTICALS, INC., et al.,** | |
| **Defendants.** | |

**BONGIOVANNI, Magistrate Judge**

## I.      INTRODUCTION

Currently before the Court is Plaintiffs AstaZeneca AB, Akteibolaget Hassle, KBI-E Inc.,

KBI Inc. and AstraZeneca LP's (collectively, "AstraZeneca") Motion to Amend their Complaint.

The Court considered this Motion without oral argument pursuant to FED.R.CIV.P. 78.  After

fully considering all papers submitted in support of and in opposition to AstraZeneca's Motion,

and for the reasons stated more fully below, AstraZeneca's Motion to Amend is GRANTED.

## II.      BACKGROUND

On March 8, 2006, AstraZeneca filed suit against Defendants IVAX Corporation, IVAX

Pharmaceuticals, Inc., IVAX Pharmaceuticals NV Inc. (incorrectly referred to in AstraZeneca's

Complaint as Zenith Laboratories, inc.), Teva Pharmaceutical Industries Ltd., and Teva

Pharmaceuticals USA  (collectively, "Teva"), asserting claims of patent infringement based upon

Teva's filing of an Abbreviated New Drug Application ("ANDA") for esomeprazole.  (Cmplt

(06-1057 (JAP)) ¶2).  Specifically, AstraZeneca alleged that Teva infringed the following five

patents: 5,714,504 (the "'504 patent"), 5,877,192 (the "'192 patent"), 6,875,872 (the "'872 patent"), 6,428,810 (the "'810 patent"), and 6,369,085 (the "'085 patent"). (*Id.*) On September 25, 2006, the Court entered an Order consolidating AstraZeneca's case against Teva with the instant matter, which AstraZeneca had initially filed against Ranbaxy Laboratories Ltd., Ranbaxy Pharmaceuticals, Inc., and Ranbaxy Inc. (collectively "Ranbaxy"). On October 19, 2007, AstraZeneca filed a Motion to Amend its Complaint.[1] Through its Motion, AstraZeneca seeks leave to amend its Complaint in order to (1) add Cipla, Ltd. ("Cipla") as a defendant; (2) add allegations of patent infringement based upon AstraZeneca's 5,948,789 patent (the "'789 patent") against both Teva and Cipla; and (3) remove AstraZeneca's claim for infringement based upon the '810 patent. (AstraZeneca's Br. at 1-2). Teva opposes AstaZeneca's Motion.

AstraZeneca argues that it should be permitted leave to amend its Complaint pursuant to FED.R.CIV.P. 15(a), which provides that such leave "shall be freely granted when justice so requires." AstraZeneca argues that contrary to Teva's assertions, its Motion is timely. In this regard, AstraZeneca notes that the Pretrial Scheduling Order entered in this matter on December 1, 2006 and amended on October 5, 2007 did not set a deadline by which motions to amend the pleadings or to join additional parties had to be filed. (AstraZeneca's Br. at 8) Further, AstraZeneca notes that it filed the instant Motion to Amend months before the scheduled close of fact discovery. (*Id.*) Additionally AstraZeneca argues that it promptly filed its Motion to

---

[1]On March 21, 2008 the Court administratively denied AstraZeneca's Motion to Amend in order to allow the parties to obtain discovery from three individuals located in Sweden and more importantly to afford the parties an opportunity to attempt to settle this matter. Subsequently, AstraZeneca and Ranbaxy reached a settlement. When it became clear that a settlement between AstraZeneca and Teva was not likely and that the Court could not resolve the issues underlying AstraZeneca's Motion to Amend by securing Cipla's voluntary agreement to participate in discovery, the Court deemed AstraZeneca's Motion to be refiled.

Amend within a month of obtaining discovery (which AstraZeneca claims Teva and Cipla should have produced long agon) that supports its proposed amendments.  (*Id*. at 8-9).  For example, AstraZeneca argues that it could not assess the viability of its proposed claims involving the '789 patent and its claims against Cipla until it obtained the Drug Master File (the "DMF"), "which provides manufacturing instructions for the active drug substance."  (*Id*. at 3).  AstraZeneca claims that it diligently attempted to obtain information from Teva regarding the development, manufacture and composition of Teva's ANDA product and the active ingredient in same from the beginning of 2006.  AstraZeneca further claims that despite its efforts, Teva did not even produce the ANDA until May 16, 2006.  The ANDA disclosed that Cipla manufactured Teva's ANDA product and the active ingredient used therein.  The ANDA also disclosed that Cipla is located in India and that Byron Chemical Company, Inc. ("Byron") serves as Cipla's United States registered agent for the DMF.  (*Id*.)  AstraZeneca notes that in early May 2006, the Court ordered Teva to "take all reasonable efforts to obtain the DMF" (May 9, 2006 Order at 2) and that on May 10, 2006, Teva represented that it could not obtain the DMF and shortly thereafter informed AstraZeneca "that it should obtain the DMF through third-party discovery." (AstraZeneca's Br. at 3).  AstraZeneca argues that over the following twelve months it "continued working to reach an agreement with Teva regarding voluntary production of the DMF and other Cipla documents[,]" albeit to no avail.  (*Id*. at 3-4).

AstraZeneca also argues that at the same time it attempted to obtain the aforementioned discovery from Teva, it also "sought to obtain agreements between Teva and Cipla in order to determine whether Teva had custody and control over the documents and samples in question." (*Id*. at 4).  AstraZeneca notes that after failing to obtain the agreements voluntarily from Teva, it

obtained a Court Order requiring Teva to produce them, which Teva did on March 5, 2007, although in an "aggressively-redacted" format. (*Id.*) AstraZeneca argues that the agreements between Teva and Cipla demonstrate that Teva does in fact have legal custody and control over the Cipla documents at issue and therefore an independent obligation to produce them. (*Id.*) However, despite this independent obligation, AstraZeneca claims that Teva still failed to meet its discovery obligations.

Further, AstraZeneca argues that given Teva and Cipla's resistance to producing the discovery requested (which Teva and Cipla represented was forthcoming), AstraZeneca also "contemporaneously sought to obtain Cipla-related documents from a third-party, Cipla's agent Byron." (*Id.*) AstraZeneca notes that in March 2007, when it became clear that Teva would not timely produce Cipla's documents, AstraZeneca sought to obtain the DMF and other Cipla documents from Byron. (AstraZeneca's Reply Br. at 9). AstraZeneca argues that it acted reasonably in not immediately seeking to obtain the DMF from Byron in May 2006 because Byron was located in New York, outside of this Court's jurisdiction, and, pursuant to FED.R.CIV.P. 45(c)(1), "parties seeking third-party discovery are required to minimize the burden on the third-party, including taking efforts to exhaust traditional discovery methods from parties in the action[,]" which AstraZeneca argues is exactly what it did. (AstraZeneca's Reply Br. at 11).

With respect to the discovery it sought from Byron, AstraZeneca argues that initially Byron objected to AstraZeneca's requests, but that on May 21, 2007, Byron agreed to produce Cipla documents, including the DMF. AstraZeneca further argues that like Teva, Byron did not follow through with its agreement to produce documents, and, after AstraZeneca had granted

4

Byron several extensions because it in good faith believed that Bryon would produce documents as they indicated they would, "[o]n July 2, 2007, Byron abruptly changed its position and informed AstraZeneca that it would not produce any responsive documents unless and until AstraZeneca agreed to withhold them from Ranbaxy's counsel . . . ." (*Id*. at 5). Given Byron's new stance, AstraZeneca asserts that on July 11, 2007 it was forced to file a motion to compel in the Southern District of New York. AstraZeneca notes that on August 7, 2007, Judge Kimba M. Wood granted its motion to compel. (*Id*. at 6). Judge Wood's Order notwithstanding, AstraZeneca argues that Byron has continued to delay its production and indeed has refused to produce all documents responsive to AstraZeneca's subpoena.

Further, AstraZeneca argues that it did not seek to obtain third-party discovery directly from Cipla because it believed it was unnecessary given Teva and Cipla's repeated assurances that they would produce the Cipla documents. AstraZeneca also notes that because Cipla is located in India and India is not a member of the Hague Convention, "obtaining third-party discovery from India is uncertain and often prolonged." (AstraZeneca's Reply Br. at 8). In addition, AstraZeneca believed it was unnecessary to engage in this process as Teva was independently responsible for producing the documents at issue. (*Id*.)

Given its diligent efforts to obtain the discovery that establishes the viability of its proposed amendments, coupled with the fact that it filed its Motion to Amend within a month of obtaining that discovery, AstraZeneca argues that its Motion is timely. In addition, AstraZeneca claims that any alleged delay results directly from the actions of Teva, Cipla and Byron. (*Id*. at 11). Further, AstraZeneca argues that despite Teva's claims to the contrary, no real prejudice will result if AstraZeneca's proposed amendments are allowed. In support of this contention,

AstraZeneca notes that at the time it filed its Motion to Amend fact discovery had not closed; in fact, nearly five months of fact discovery remained. (*Id*. at 12). In addition, AstraZeneca notes that both Teva and Ranbaxy had already propounded document requests concerning the '789 patent and the manufacture of esomeprazole, and AstraZeneca provided documents responsive to same. (*Id*.) Further, AstraZeneca argues that granting its Motion will make discovery more efficient by making Cipla a party to this action and subject to the jurisdiction of this Court. AstraZeneca also argues that its proposed amendments will not significantly delay the resolution of this matter. In this regard, AstraZeneca claims that it has been Teva and Ranbaxy that have requested extensions of the discovery schedule, not AstraZeneca. (*Id*. at 12-13). AstraZeneca also notes that it has not previously sought leave to amend, and that its proposed new claims, which involve the same product at issue as the original claims, will not overly complicate this matter. Indeed, AstraZeneca argues that allowing its amendment would serve the interest of judicial economy as the issue is not whether it "will be able to bring an infringement action on the '789 Patent or bring an infringement action against Cipla[,]" but where, and "[c]ommon sense dictates" that those claims be considered here. (*Id*. at 1, 12-13) Thus, AstraZeneca claims that any delay in filing the its Motion to Amend resulted from Teva and Cipla's gamesmanship and poor judgment. Consequently, AstraZeneca argues that they should suffer the result. (*Id*. at 13).

Finally, AstraZeneca argues that in addition to not being untimely, its proposed amendments are also not futile. Indeed, AstraZeneca argues that both its proposed claims against Teva and Cipla for infringement of the '789 patent as well as its proposed declaratory judgment claims against Cipla for direct infringement, inducement of infringement and contributory

6

infringement under 35 U.S.C. §§ 271(a),(b), (c) and (g) and induced infringement under 35

U.S.C. § 271(e), are cognizable and are sufficient to survive a motion to dismiss. (AstraZeneca's

Br. at 9-13). Consequently, AstraZeneca argues that its Motion to Amend should be granted.

Teva opposes AstraZeneca's Motion to Amend, arguing that AstraZeneca's delay in

amending its Complaint is undue and that Teva will suffer significant prejudice if AstraZeneca's

proposed amendments are allowed.[2] Specifically, Teva notes that since at least as early as May

18, 2006, AstraZeneca has known that Cipla is the holder of the DMF at issue and Teva's

planned manufacturer for esomeprazole. (Teva's Opp. Br. at 2). Further, Teva notes that since at

least May 18, 2006, AstraZeneca has also known that Bryon, Cipla's United States registered

agent, held a copy of the DMF. (*Id*. at 2-3). In addition, Teva points out that in May 2006 it

informed AstraZeneca that it could not obtain a copy of the DMF and that AstraZeneca should

seek to obtain the DMF through third-party discovery. (*Id*. at 3). In this regard, Teva argues that

contrary to AstraZeneca's factually and legally baseless assertions, Teva's agreement with Cipla

does not provide a basis for finding that Teva has "control" over documents in Cipla's

possession, and therefore Teva could not produce what it did not have. (*Id*. at 4). Further, Teva

observes that AstraZeneca did not immediately seek to obtain a copy of the DMF from Byron,

but instead waited ten months, until March 1, 2007, to subpoena Byron and request a copy of the

DMF. (*Id*.) Teva also notes that on March 23, 2007, Byron made timely objections to

AstraZeneca's subpoena, including objections to producing information that AstraZeneca would

disclose to Ranbaxy or Ranbaxy's counsel. (*Id*. at 3, 5-6). Nevertheless, Teva points out that

---

[2]Teva does not oppose AstaZeneca's proposed amendment that would remove its
infringement claim based on the '810 patent. (Teva Opp. Br. at 2).

AstraZeneca did not respond to Byron's objections for two months.  (*Id*. at 3).  Teva argues that

"there is no explanation for AstraZeneca's ten-month and two-month delays in pursuing third-

party discovery with Byron."  (*Id*.).

Moreover, Teva argues that AstraZeneca mischaracterizes its alleged continual efforts

between May 2006 to 2007 to obtain the DMF and other Cipla documents from Teva.  Indeed,

Teva argues that "between may 2006 and late October 2006 - after Teva/IVAX informed

AstraZeneca that it could obtain a copy of the DMF through third-party discovery of Byron -

Teva/IVAX heard nothing from AstraZeneca about Cipla documents."  (*Id*. at 5 (citations

omitted)).  In addition, Teva claims that while AstraZeneca complains that Teva misled it into

thinking that Cipla's production of documents was forthcoming, "AstraZeneca has known since

at least November 2006 that non-party Cipla's voluntary production was contingent on limiting

access to AstraZeneca's and Teva/IVAX's outside counsel and third-party experts."  (*Id*.)  Teva

argues that the only reason the Cipla production was not "forthcoming" was because AstraZeneca

refused to accept Cipla's conditions for production.  (*Id*.).

Teva argues that given the aforementioned time-line of events there is no reason why

AstraZeneca could not have moved to amend earlier.  To the extent AstraZeneca seeks to add

Cipla as a party in order to assert claims based on the five patents originally asserted against

Teva, Teva objects because AstraZeneca has known since May 2006 that Cipla is Teva's planned

manufacturer for esomeprazole.  (*Id*. at 7).  Teva argues that no new facts regarding Cipla have

come to light since May 2006 and that AstraZeneca's argument that it could not assess the

viability of its claims against Cipla until after obtaining the DMF is "absurd."  (*Id*.)  In this

regard, Teva notes that AstraZeneca did not rely on the DMF to assert its original claims against

Teva and that as a result, "its claimed reliance on the DMF here is not credible." (*Id*.) Consequently, Teva argues that AstraZeneca has failed to proffer a reasonable explanation for its undue delay in seeking to amend to add Cipla as a party. (*Id*.)

Further, Teva claims that Cipla's purported refusal to voluntarily produce documents to AstraZeneca does not excuse AstraZeneca's undue delay in seeking to amend its complaint. Indeed, Teva argues that Cipla is and has been willing to voluntarily produce documents to AstraZeneca on the condition that Ranbaxy not be given access to the documents produced. (*Id*. at 7-8). Teva asserts that AstraZeneca unreasonably refused to accept this condition and that its refusal to do so does not justify AstraZeneca's delay in seeking to amend. (*Id*.) Teva also notes that despite the alleged critical nature of Cipla's documents, AstraZeneca never pursued any third-party discovery from Cipla. (*Id*.)

Similarly, Teva contends that AstraZeneca also unduly delayed seeking to amend its Complaint to assert claims based on the '789 patent. In this regard, Teva asserts that AstraZeneca "was not diligent in obtaining a copy of the DMF[,]" which AstraZeneca contends it needed in order to assess the viability of its claims based on the '789 patent. (*Id*. at 9). Specifically, Teva notes that on May 18, 2006, it informed AstraZeneca that Byron, Cipla's United States registered agent located in New York, had a copy of the DMF and that AstraZeneca could readily obtain a copy of the DMF through third-party discovery directed at Byron. (*Id*.) Teva argues that despite the alleged materiality of the DMF, AstraZeneca failed to subpoena Byron for nearly ten months. Moreover, Teva argues that after subpoenaing Byron and receiving Byron's timely objections in March 2007, AstraZeneca inexplicably waited two months before responding to Byron's objections. (*Id*.) Further, Teva argues that AstraZeneca's failure to obtain

the DMF sooner is no one's but AstraZeneca's fault. Indeed, Teva claims that after being informed that Teva could not obtain a copy of the DMF in May 2006, AstraZeneca waited until late October 2006 before seeking to obtain a copy from Cipla. (*Id*.) Teva also argues that since at least November 2006, AstraZeneca has known that Cipla would only produce the DMF and related documents if AstraZeneca agreed not share them with Ranbaxy. Nevertheless, AstraZeneca waited until March 2007 to subpoena Byron. (*Id*.)

Consequently, Teva argues that AstraZeneca's decision to wait ten months to subpoena Byron and two months to respond to Byron's objections was neither a reasonable nor diligent course of action. (*Id*.) Moreover, Teva claims that AstraZeneca's excuses for failing to amend sooner do not "explain its undue delay in obtaining the DMF and asserting the '789 patent." (*Id*.) Teva also argues that contrary to AstraZeneca's assertions, "AstraZeneca could have amended its Complaint to add an infringement claim of the '789 patent relying on section 295 as early as May 2006 [and] its delay to do so is unreasonable[.]" (*Id*. at 10).

Teva also argues that it will be unfairly prejudiced if AstraZeneca is permitted to amend its Complaint. In this regard, Teva argues that if AstraZeneca's proposed amendments are permitted, then it will have to expend significant extra resources to conduct extensive discovery on the '789 patent. (*Id*. at 11). Indeed, Teva argues that it will have to spend substantial time and resources reviewing the more than 3.3 million pages of documents that AstraZeneca has already produced and that Teva has already reviewed with an eye toward preparing a defense on the '789 patent. (*Id*.) In addition, Teva argues that it will also have to propound additional discovery requests pertaining to the '789 patent. (*Id*. at 12). Further, Teva claims that it will be prejudiced by AstraZeneca's proposed amendments, because they will significantly delay the

resolution of this matter.  (*Id.*)  In fact, Teva asserts that AstraZeneca's proposed amendments

will "set this case back by many months" because if permitted Teva will need to conduct

extensive additional discovery and Cipla, which has not participated in discovery, "will need to

do so to defend against AstraZeneca's infringement claims."  (*Id.* at 13).  Teva claims that the

substantial delay of the resolution of this matter would be extremely prejudicial to Teva.  (*Id.*)

Teva also argues that in contrast to the prejudice it would suffer, AstraZeneca would

substantially benefit from the delay its proposed amendments would cause.  (*Id.*)

## III.   LEGAL ANALYSIS

Pursuant to FED.R.CIV.P. 15(a), leave to amend the pleadings is generally given freely.

*See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir.

2000).  Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad

faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

the amendment, [or] futility of the amendment."  *Id.*  However, where there is an absence of

undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be

liberally granted.  *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

In deciding whether to grant leave to amend, "prejudice to the non-moving party is the

touchstone for the denial of the amendment."  *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir.

1989) (quoting *Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n*, 573 F.2d

820, 823 (3d Cir. 1978)).  To establish prejudice, the non-moving party must make a showing

that allowing the amended pleading would (1) require the non-moving party to expend significant

additional resources to conduct discovery and prepare for trial, (2) significantly delay the

11

resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction. *See Long*, 393 F.3d at 400.  Delay alone, however, does not justify denying a motion to amend.  *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).  Rather, it is only where delay becomes "'undue,' placing an unwarranted burden on the court, or . . . 'prejudicial,' placing an unfair burden on the opposing party" that denial of a motion to amend is appropriate.  *Adams v. Gould Inc.,* 739 F.2d 858, 868 (3d Cir. 1984).  Moreover, unless the delay at issue will prejudice the non-moving party, a movant does not need to establish a compelling reason for its delay.  *See Heyl & Patterson Int'l, Inc. v. F. D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419, 426 (3d Cir. 1981).

Here, Teva opposes AstraZeneca's Motion to Amend arguing undue delay and prejudice.[3] The Court evaluates Teva's grounds for opposition and conversely AstraZeneca's proposed amendments based on the propriety of the amendments at the time AstraZeneca filed the instant Motion.  With respect to the timing of AstraZeneca's Motion to Amend, the Court notes that no deadline was set for the filing of such motions in the Court's Pretrial Scheduling Order.  As a result, the instant Motion is not untimely under that Order, though that fact is not dispositive of the issues at hand.  Indeed, the "timeliness" of AstraZeneca's Motion under the Court's Pretrial Scheduling Order notwithstanding, the Court still examines AstraZeneca's proposed amendments

---

[3]Teva did not oppose AstraZeneca's Motion based on the futility of AstraZeneca's proposed amendments.  The Court, therefore, does not extensively discuss futility herein.  The Court has, however, reviewed AstraZeneca's proposed amendments for futility.  A proposed amendment is futile when it would not survive a motion to dismiss.  *Alvin*, 227 F.3d at 121 (3d Cir. 2000).  In evaluating a motion to dismiss, the Court "must accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them." *(Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007).  Based upon its review, the Court finds that AstraZeneca's proposed amendments are not futile.

for undue delay and prejudice.

In determining whether AstraZeneca's Motion was the byproduct of undue delay, the Court examines AstraZeneca's reasons for not amending sooner.  *See Lyon v. Goldstein*, Civil Action No. 04-3458 (MLC), 2006 WL 2352595, at *4 (D.N.J. Aug. 15, 2006).  AstraZeneca claims that it could not assess the viability of its proposed amendments until it obtained the DMF.  AstraZeneca further claims that it diligently attempted to obtain the DMF from Teva since May 2006 and asserts that when it became clear that Teva would not produce the DMF, despite its alleged obligation to do so, AstraZeneca then sought to obtain the DMF from Byron in March 2007.  AstraZeneca argues that its decision to wait ten months before engaging in third-party discovery with Byron was reasonable in light of Teva's alleged legal obligation to produce the DMF, coupled with the fact that Teva informed AstraZeneca that the DMF was forthcoming and the fact that AstraZeneca had an obligation to minimize the burden and expense imposed on third-party Byron.  The Court does not find AstraZeneca's explanations for failing to amend sooner to be persuasive.  This is particularly true with respect to AstraZeneca's reasons for not seeking to join Cipla as a party, at least with respect to the five patents originally in suit, in May 2006 when AstraZeneca learned that Cipla is Teva's planned manufacturer for esomeprazole. The Court notes that AstraZeneca brought claims against Teva on these five patents without having first obtained the DMF and finds AstraZeneca's reasons for waiting approximately one and a half years to bring similar claims against Cipla to be less than compelling.

In addition, to the extent it was necessary for AstraZeneca to obtain the DMF before seeking to amend its Complaint to join Cipla as a party and to bring claims based on the '789 patent, the Court finds that AstraZeneca could have been more assiduous in its efforts to obtain a

13

copy of the DMF.  Regardless of whether Teva had or has "control" of the DMF, in May 2006, Teva informed AstraZeneca that it could not obtain the DMF, but that a copy could be obtained through third-party discovery directed at Byron, Cipla's United States registered agent.  The Court understands AstraZeneca's argument that it did not immediately seek third-party discovery from Byron because it was attempting to obtain the DMF from Teva and because it wanted to minimize the burden and expense imposed upon Byron.  The Court, however, does not find AstraZeneca's reasons for waiting ten months to subpoena Byron to be convincing.  First, from May 2006 to October 2006, it does not appear that AstraZeneca made any substantial efforts to secure the DMF from Teva or Cipla.  Second, regardless of whether any such efforts were made, the Court does not believe that AstraZeneca would have imposed an undue burden or expense on Byron had AstraZeneca subpoenaed Byron for the DMF and other relevant Cipla documents.

For these reasons, the Court does not find AstraZeneca's explanations for the delay in seeking to amend to be very convincing.  The Court, however, does appreciate that, while not compelling, reasons have been proffered.  Further, the Court is mindful of the fact that unless the delay at issue will prejudice the non-moving party, a movant seeking to amend does not need to establish a compelling reason for its delay.  *See Heyl & Patterson Int'l, Inc.*, 663 F.2d at 426. Consequently, the Court finds that AstraZeneca's delay, alone, in moving to amend does not warrant the denial of its proposed amendments.  The Court therefore turns its analysis to whether Teva would be unfairly prejudiced by AstraZeneca's proposed amendments.

As previously stated, in deciding whether AstraZeneca's proposed amendments would unfairly prejudice Teva, the Court considers whether permitting the proposed amendments would (1) require Teva to expend significant additional resources to conduct discovery and prepare for

14

trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction. *See Long*, 393 F.3d at 400. Here, only the first two considerations are at issue.

As to the first, the Court does not believe that Teva will have to expend significant additional resources to conduct discovery or prepare for trial if AstraZeneca's Motion is granted. This is not to say that Teva will not have to expend additional resources. If AstraZeneca is permitted to pursue claims based on the '789 patent, Teva certainly will. Indeed, the Court is aware that if AstraZeneca is permitted to pursue the '789 patent, then Teva will have to re-review the documents that have already been produced and will likely also have to engage in additional document discovery and pursue additional depositions. The Court, however, is not convinced that this additional expenditure of resources will be so significant as to unfairly prejudice Teva.

Further, while the question is a closer one, the Court finds that if permitted, AstraZeneca's proposed amendments will not significantly delay the resolution of this dispute. At the time AstraZeneca filed its Motion to Amend over five months of fact discovery remained outstanding. While AstraZeneca's proposed amendments will require Teva to spend additional time re-reviewing and taking additional discovery on the '789 patent, the Court has not been persuaded that this discovery will necessitate significant additional discovery, nor does the Court believe that it will necessitate more than five months of additional discovery. Instead, the Court believes that Teva and AstraZeneca should be able to complete discovery on the '789 patent in a shorter period of time. Further, while the Court is aware that permitting AstraZeneca to join Cipla as a party will also delay this matter (indeed, the Court is aware that the addition of Cipla may delay this matter because Cipla may challenge this Court's jurisdiction and, regardless,

Cipla, as a current non-party, will need time to engage in and complete discovery), the Court does not believe that the delay will be significant, nor does the Court believe that Teva will be unfairly prejudiced by it.[4]

Moreover, the Court finds that the preservation of judicial economy militates in favor of granting AstraZeneca's Motion.  As AstraZeneca points out, the question is not whether AstraZeneca will be able to pursue claims on the '789 patent or bring an infringement action against Cipla, but rather, the forum in which such claims will be brought.  This Court is familiar with the parties' claims regarding AstraZeneca's esomeprazole product and believes that it is best equipped to efficiently and economically handle same.

## IV.    CONCLUSION

For the reasons stated above, AstraZeneca's Motion to Amend is GRANTED.  An appropriate Order follows.

 Dated: December 15, 2008

                    s/Tonianne J. Bongiovanni
                    **HONORABLE TONIANNE J. BONGIOVANNI**
                    **UNITED STATES MAGISTRATE JUDGE**

---

[4]The Court appreciates Teva and Cipla's efforts to alleviate the need to join Cipla by agreeing to voluntarily provide substantial discovery to AstraZeneca.  While the Court finds Teva and Cipla's efforts to be laudable, they unfortunately do not negate the need under the circumstances of this case to permit AstraZeneca's proposed amendments.